ALSD Local 106 (Rev. 07/13) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Alabama

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

A black Samsung Android cellphone seized from Daniel Conner on 4/20/22, currently in possession of the U.S. Marshals Office, U.S. Courthouse, Mobile, Alabama

Case No. 23-163-N

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Southern District of Alabama, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Possession with Intent to Distribute a Controlled Substance |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

DUSM *Lawanda Bedgood*
*Applicant's signature*

DUSM Lawanda Bedgood
*Printed name and title*

Sworn to before me and attestation acknowledged pursuant to FRCP 4.1(b)(2).

Date: July 12, 2023  3:10pm

City and state: Mobile, Alabama

*Judge's signature*

Hon. Katherine P. Nelson, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF A BLACK IPHONE SEIZED FROM DANIEL CONNER ON 4/20/2022, CURRENTLY IN POSSESSION OF THE U.S. MARSHALS, U.S. COURTHOUSE, MOBILE, ALABAMA | Case No. 23-163-N<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Lawanda BEDGOOD, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property, namely, a black Samsung cell phone, which is currently in the possession of the United States Marshals Service, United States Courthouse, Mobile, Alabama, and the extraction from that property of electronically stored information described in Attachment B.

I am Deputy U. S. Marshal Lawanda BEDGOOD. I am employed by the United States Marshals Service in Mobile, Alabama, and I have served in this capacity since 2010. Prior to being employed by the United States Marshals Service, I was a local police officer for approximately 13 years, nine of which were as a Narcotics Detective. During that time, I was a Task Force Officer assigned to the DEA for two years and a Task Force Officer assigned to the FBI for three years.

I have received training in the conduct of drug dealers and related investigations, to include the manufacture of certain types of illegal drugs. I have participated in many such

1

investigations as a police officer and in my present employment as a Deputy U.S. Marshal. I have assisted other officers with drug cases. I have experience in debriefing defendants, debriefing confidential sources of information, witnesses and other persons having personal experience and knowledge of the acquisition, transportation, and distribution of illegal controlled substances, specifically including methamphetamine.

This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter. All dates, amounts, descriptions, and locations described in my affidavit are approximations. The proffered facts are allegations only.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

The properties to be searched is the device described below, which is currently located in an evidence storage locker at the United States Marshal's Office, U. S. Courthouse, Mobile, Alabama, namely a black Samsung cell phone (SM-G781V, IMEI 354630362504280) seized from Daniel Conner on 4/20/2022, when other deputies and I arrested him on a federal warrant.

The applied-for warrant would authorize the forensic examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

On April 20, 2022, two other Deputy U. S. Marshals (Deputies NEGRON and HOWARD) and I were traveling in north Mobile County attempting to locate fugitives on federal arrest warrants. One such fugitive was Daniel Dewayne CONNER, who was wanted on an arrest warrant for a violation of his supervised release. We had CONNER's address listed as ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓. We drove by his house and observed him standing in the back yard of the residence, working on a truck. We continued past his house and geared up in our identifiable U.S.

2

Marshals equipment to make an endeavor at the residence. As we approached the house, CONNER started walking away from the truck, towards the back area of the house. A teenage girl came out the front door of the residence followed by ███████████████████████████. After identifying ourselves and telling them we had an arrest warrant for Daniel CONNER, ███ ████████ told us that Conner was there and he was out back. While speaking with ███ ████████, another female appeared. She was later identified as ████████████████ ████████. Hearing that we were there for CONNER, ████████ immediately ran to the backyard and warned CONNER that we were there for him. Deputy U.S. Marshal ████████████ observed this and saw CONNER immediately dash to the back of the property, jump the chain link fence and run off into the woods behind the house. Deputies spoke with ████████████ and ████████ extensively about the importance of getting CONNER into custody. ████████████ called CONNER on his cell phone and spoke with him about coming out of the woods and surrendering to the U. S. Marshals. CONNER agreed to come out. After waiting a while and CONNER not showing, we had ████████ call him a second time. He again stated he would come out of the woods but never did. We had ████████ continue to call him but he quit answering his phone. As were preparing to leave the home, ███████████████████████ advised they would bring him to the Baldwin County Jail, once he returned home later that evening.

After leaving the residence, we observed a dirt road that ran parallel behind the wooded area that CONNER had fled to. We drove to the end of the dirt road and turned around. As we were headed back to the main roadway, we observed CONNER crouched down, approximately six to eight feet inside the wood line, talking on his cell phone. We stopped our vehicle and ordered CONNER to get off his phone and come out of the woods. CONNER refused and kept talking on the phone. Myself and Deputy ████████ went into the wood line and attempted to take CONNER

3

into custody. CONNER refused to comply and attempted to resist deputies by not giving up his hands and attempting to make himself into a tight ball. During this struggle, a gun fell out of CONNER's waistband. We eventually got him under our control and placed him into handcuffs. After getting CONNER into custody, we retrieved the handgun (9 mm Sig Sauer, serial number 66A387027) and his Samsung cell phone. The handgun was found to be loaded with one in the chamber, for a total of 12 bullets. A search incident to arrest revealed that CONNER had two clear, plastic baggies containing methamphetamine, one metal can containing marijuana, and a small cylinder tube containing Fentanyl in his pocket. Additionally, while being booked into Baldwin County Jail, corrections officers discovered more methamphetamine hidden inside folded currency that was inside CONNER's wallet. It should be noted that during the drive to the jail, I asked ███████████ if the gun was loaded, to which CONNER replied, "100% absolutely…That's a rock. What good is a gun with no bullets? All you can do is throw it".

███████████ seized took possession of the gun, phone, and drugs and placed inside an evidence locker at the U.S. Courthouse located at 155 St. Joseph Street in Mobile, Al. He later submitted the drug evidence to the DEA lab for forensic testing and gave the cell phone to CONNER'S U.S. Probation Officer Kim REED. I am aware that probation officers are often authorized to search their probationer's phones as a condition of their supervision. On May 17, 2023, I received CONNER's cell phone from the evidence custodian at the U.S. Probation office and have maintained it in my custody since then.

While I am aware that Officer REED conducted a search of CONNER's phone, I am seeking this warrant in an abundance of caution to avoid any suggestion that said phone was searched without a finding of probable cause. I believe that CONNER's phone will contain evidence of criminal activity material to my investigation into whether he committed additional

4

crimes involving possession with intent to distribute controlled substances, including methamphetamine. Through my training and experience of other narcotics agents with whom I have worked, I have learned the following and expect this type of information to be contained on the cellular devices to be searched:

Cocaine, methamphetamine, fentanyl, marijuana and/or other controlled substances traffickers commonly "front" (provide on consignment) to their clients; that the books, records, receipts, notes, ledgers, etc., are maintained where the cocaine, methamphetamine, fentanyl, marijuana, and/or the controlled substance traffickers have ready access to them.

Traffickers in cocaine, methamphetamine, fentanyl, marijuana and/or other controlled substances maintain books, records, receipts, notes, ledgers, money orders, and other documents relating to the transportation and distribution of controlled substances, and these records are often contained in cellular devices like the black Samsung cell phone seized from Conner.

## LOCATION OF DEVICE

The device is currently in the lawful possession of the United States Marshals Service because it was seized incident to CONNER's arrest, described above, and returned to our custody after examination by Officer REED. CONNER's phone is currently in storage in an evidence locker at the United States Marshals Office, U. S. Courthouse, Mobile, Alabama. In my training and experience, I know that the device has been stored in a way that their contents are, to the extent material to this investigation, in substantially the same state as they were when the device first came into our possession.

## TECHNICAL TERMS

Based on my training and experience, I use the following technical terms to convey the following meanings:

5

*Wireless telephone*: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

*Digital camera*: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

*Portable media player*: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash

6

memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

*GPS*: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

*IP Address*: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

7

*Internet*: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when such devices communicating with each other are in the same state.

Based on my training, experience, and research, I know that CONNER's cell phone has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, and GPS navigation device. In my training and experience, examining data stored on Conner's cell phone can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

Based on my knowledge, training, and experience, I know that electronic devices like CONNER's cell phone can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period on such devices. This information can sometimes be recovered with forensics tools.

*Forensic evidence*. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crime described on the warrant, but also forensic evidence that establishes how CONNER's cell phone was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on Conner's cell phone.

Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

8

Forensic evidence on a device such as CONNER's cell phone can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

*Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of CONNER's cell phone consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

*Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the

9

physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the device described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

*Lawanda Bedgood*
Lawanda Bedgood
Deputy U.S. Marshal
Southern District of Alabama

THE ABOVE AGENT HAD ATTESTED
TO THIS AFFIDAVIT PURSUANT TO
FED. R. CRIM. P. 4.1(b)(2)(A) THIS 12th
DAY OF JULY, 2023

_____
HON. KATHERINE P. NELSON
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT A

The property to be searched is the black Samsung cell phone seized from Daniel CONNER on April 20, 2022. This warrant authorizes the forensic examination of this device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

All records on the device described in Attachment A that relate to violation of 21 U.S.C. § 841 (a)(1), including but not limited to"

1. Lists of customers and related identifying information;

2. Communications with co-conspirators;

3. Types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific drug and money laundering transactions;

4. Any information related to sources of drugs or criminal proceeds (including names, addresses, phone numbers, pictures, screenshots, or any other identifying information);

5. Any information recording schedule or travel by the defendants and their coconspirators; and

6. All bank records, checks, credit card bills, account information, and other financial records.

Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

7. As used above, the terms "records" and "information" include all the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.